```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                Civil No. 09-672(DSD/AJB)
```

Cargill, Incorporated,

      Plaintiff,

v.                                                         **ORDER**

Biodiesel of Las Vegas, Inc.,

      Defendant.

    Jacob D. Bylund, Esq., Sara L. Bruggeman, Esq. and Faegre & Benson, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, counsel for plaintiff.

    Nicole M. Moen, Esq., Patrick Mahlberg, Esq. and Fredrikson & Byron, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402 and John R. Bailey, Esq., Joshua M. Dickey, Esq. and Bailey Kennedy, 8984 Spanish Ridge Avenue, Las Vegas, NV 89148, counsel for defendant.


This matter is before the court on plaintiff Cargill, Inc.'s ("Cargill")[1] motion to compel arbitration and defendant Biodiesel of Las Vegas, Inc.'s ("Biodiesel")[2] motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue. After a review of the file, record and proceedings herein, and for the following reasons, the court grants Biodiesel's motion.

---

[1] Cargill is a Delaware corporation with its principal place of business in Minnesota. Cargill produces and markets agricultural, financial and industrial products and services throughout the world.

[2] Biodiesel is a Nevada corporation with its principal place of business in Nevada. Biodiesel produces and sells biodiesel fuel made from renewable energy sources, including soybean oil.

BACKGROUND

This dispute arises out of an alleged May 2, 2008, contract between Cargill and Biodiesel. According to Cargill, it began selling soybean oil to Biodiesel in 2005.[3] (Jirik Aff. ¶ 6, Mar. 19, 2009.) Cargill employee Mark Jirik ("Jirik"), who works at Cargill's Minnesota headquarters, negotiated the contracts with Biodiesel. (Id. ¶ 4.) Typically, the parties would begin by orally agreeing to the quantity and price of soybean oil to be purchased. (Id. ¶ 7.) Jirik would then send Biodiesel two signed copies of a "contract confirmation" which detailed those terms and included Minnesota choice-of-law and arbitration provisions. (Id. ¶¶ 8-9, Ex. C.) Biodiesel usually did not return a signed copy of the confirmation to Cargill. (Id. ¶ 12.) The parties would then arrange for delivery of the purchase. (Id. ¶ 13.) Generally, the soybean oil was sent to Biodiesel in multiple shipments from a Cargill facility in Iowa. (Id. ¶¶ 14-15.)

On May 1, 2008, Biodiesel accountant Laura Latimer ("Latimer"), emailed Jirik to determine the current price of soybean oil. (Id. ¶ 19, Ex. D.) After Jirik informed Latimer that the price was sixty cents per pound, Latimer offered to purchase one and one-half million pounds. (Id. ¶¶ 20-21, Ex. D.) Latimer later increased the offer to three million pounds. (Id. ¶ 23.)

---

[3] Biodiesel alleges that it first purchased soybean oil from Cargill in May 2006. (Latimer Decl. ¶ 3.)

Jirik then instructed Cargill employee Becky Fortin ("Fortin"), who also works at Cargill's Minnesota headquarters, to generate a contract confirmation. (Id. ¶ 27, Ex. D.)

The May 2, 2008, confirmation that Fortin sent to Biodiesel stated that Cargill agreed to sell Biodiesel three million pounds of soybean oil at sixty cents per pound. (Id. Ex. C.) The confirmation further provided that "all disputes relating to this contract shall be resolved by binding arbitration" and the contract "shall be governed by laws of the State of Minnesota." (Id.) Biodiesel did not return a signed copy of the confirmation to Cargill. (Id. ¶¶ 29-30.) That summer, Biodiesel received multiple shipments of soybean oil from Cargill. (Id. ¶ 31.)

In September 2008, the price of soybean oil fell below fifty cents per pound. (Id. ¶ 33.) Around that time, Biodiesel asked Cargill how much soybean oil had yet to be delivered on the May 2, 2008, contract, and whether Cargill would consider allowing Biodiesel to "buy-out" or "roll-forward" the remaining amount. (Id. ¶¶ 32, 35-36.) Specifically, on September 25, 2008, Biodiesel proposed that Cargill delay delivery of one million pounds of the remaining soybean oil until January 2009 for a nominal fee and allow Biodiesel to purchase soybean oil at the current market price. (Id. ¶ 34.) Alternatively, on September 30, 2008,

Biodiesel sought to purchase one million pounds of the remaining soybean oil and delay delivery of an additional one million pounds until January 2009. (Id. ¶ 36, Ex. F.)

Before the parties negotiated a "buy-out" or "roll-forward" agreement, however, Biodiesel refused to accept delivery under the alleged contract and sent Cargill an October 16, 2008, letter, stating that:

> [b]ased upon a review of [Biodiesel's] records, it does not appear as though it ever entered into an agreement with Cargill based on the terms and conditions contained in the unsigned [May 2, 2008] document.... Moreover, [Biodiesel] has never asked for nor received any of the soybean oil identified in the unsigned document.

(Id. ¶ 38, Ex. G.) At that time, the price of soybean oil had fallen below forty cents per pound. (Id. ¶ 39.)

On March 23, 2009, Cargill filed a motion to compel arbitration, alleging that Biodiesel had breached the alleged contract. Biodiesel moved on April 21, 2009, to dismiss Cargill's motion for lack of personal jurisdiction or, in the alternative, to transfer venue to the District of Nevada. The court first considers the jurisdictional question.

## DISCUSSION

### I. Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2),

4

a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant. See Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998). The court "look[s] at the facts in the light most favorable to the nonmoving party and resolve[s] all factual conflicts in favor of that party." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted). A federal court may assume jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (citation omitted). Because the Minnesota long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause," the court need only consider due process requirements. Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted).

To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." Romak, 384 F.3d at 984 (citations and internal quotation omitted). "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." Coen, 509 F.3d at 905 (citations and quotation omitted). A defendant should reasonably anticipate being haled into court in

a forum state within which it "purposefully avail[ed] itself of the privilege of conducting activities, ... thus invoking the benefits and protections of [the state's] laws." Id. (citation and quotation omitted). A court considers five factors to measure minimum contacts: "(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004) (citation and quotation omitted). The court gives significant weight to the first three factors. See id.

### A. Specific Personal Jurisdiction

In this case, Cargill maintains that the court has specific personal jurisdiction over Biodiesel. Specific jurisdiction exists when the cause of action "arise[s] out of" or "relate[s] to" a defendant's activities within that state. St. Jude Med., Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 591 (8th Cir. 2001) (citation and internal quotations omitted).

It is undisputed that Cargill has established the existence of certain contacts between Biodiesel and Minnesota. First, the parties agree that Biodiesel sent emails and made telephone calls to Minnesota in connection with its business with Cargill. The parties also agree that the alleged contract included a Minnesota

choice-of-law provision.  While these contacts support the court's exercise of personal jurisdiction over Biodiesel, they are not by themselves sufficient to confer jurisdiction.  See Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd., 89 F.3d 519, 523 (8th Cir. 1996).

In further support of its argument, Cargill contends that personal jurisdiction exists over Biodiesel because Biodiesel has purposefully engaged in a long-term business relationship with Cargill.  According to Cargill, over the course of three years, the parties have communicated "hundreds" of times and "negotiated dozens of contracts for the purchase and sale of millions of pounds of soybean oil, which have resulted in approximately two hundred forty shipments of soybean oil from Cargill to Biodiesel."  (Pl.'s Mem. Resp. at 2, 11; Jirik Aff. ¶ 6, Mar. 19, 2009.)  Cargill also maintains that Biodiesel solicited the May 2, 2008, purchase and contemplated a future business relationship with Cargill.

While merely entering into a contract with a resident does not suffice to confer personal jurisdiction, contacts between parties that are "numerous and significant and extend[] over a substantial time," may demonstrate that the defendant "purposefully availed itself of the privilege of conducting activities" within the forum state.  Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995)

(quotation omitted); see Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 698 (8th Cir. 1995) (contract alone insufficient).

In the instant case, however, the contacts alleged by Cargill do not substantially connect Biodiesel to Minnesota. No Biodiesel employee ever visited Minnesota in connection with the alleged contract or any other business with Cargill. (Latimer Decl. ¶ 11.) The soybean oil that Biodiesel purchased from Cargill was sent from Iowa, not Minnesota. (Jirik Aff. ¶ 14, Mar. 19, 2009.) Biodiesel is not registered to do business in Minnesota, has no employees or offices in Minnesota, does not own Minnesota property, and does not pay Minnesota taxes or maintain a Minnesota bank account. (Latimer Decl. ¶¶ 7, 9-11.) While the contacts alleged by Cargill indicate that an intermittent business relationship existed between it and Biodiesel, they do not demonstrate that Biodiesel purposefully availed itself of the privilege of conducting business in Minnesota. See Inst. Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc., 747 F.2d 448, 456 (8th Cir. 1984) ("[I]t is a defendant's contacts with the forum state that are of interest in determining whether personal jurisdiction exists, not its contacts with a resident of the forum.") (citation omitted); Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 654 (8th Cir. 1982) (seller's unilateral performance in forum state insufficient to establish personal jurisdiction over non-resident defendant).

8

Furthermore, although Minnesota has an interest in providing its residents with a forum within which to resolve disputes, this interest "cannot make up for the absence of minimum contacts." Digi-Tel Holdings, Inc., 89 F.3d at 525 (citation omitted). The convenience of the parties also weighs in favor of dismissing this action. While it appears that the documents and witnesses relevant to this action are located in both states, a forum in Nevada would better accommodate Biodiesel, a small company with fewer resources in comparison to Cargill.[4] Therefore, in consideration of the above factors, the court determines that it does not have specific personal jurisdiction over Biodiesel. Accordingly, the court grants Biodiesel's motion to dismiss and does not consider Cargill's motion to compel.

**CONCLUSION**

Based upon the above, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to dismiss due to lack of personal jurisdiction [Doc. No. 14] is granted;

---

[4] At oral arguments on June 19, 2009, Cargill stated that it would not oppose holding arbitration proceedings in Nevada. This position suggests that litigating in Nevada would not inconvenience Cargill.

2. Plaintiff's motion to compel arbitration [Doc. No. 4] is dismissed as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 28, 2009

s/David S. Doty
David S. Doty, Judge
United States District Court